Barbara June MUNCY et vir, Appellants,

v.

GENERAL MOTORS CORP. et al., Appellees.

No. 16045.

Court of Civil Appeals of Texas.

Dallas.

March 16, 1962.

Rehearing Denied May 11, 1962.

Appellants Barbara June Muncy and her husband Charles Muncy, residents of Kilgore, Gregg County, Texas, filed suit in Dallas County, Texas for personal injuries sustained by Barbara June Muncy in an automobile mishap in Kilgore, Gregg County, Texas.

The defendants, appellees here, are C. L. Lane and wife, Alice Hudnall Lane, and the latter's mother, Nellie Hudnall, a widow, all three of whom are residents of Overton, Rusk County, Texas, and Davis Smith, individually and doing business as Smith Chevrolet Company, a resident of Henderson, Rusk County, Texas. Also a defendant is General Motors Corporation, a Delaware Corporation, with a permit to do business in the State of Texas, its principal office and place of doing business in Texas being located in Dallas, Dallas County, Texas, where the suit was brought.

C. L. Lane and wife, Alice Hudnall Lane, Nellie Hudnall, and Davis Smith filed pleas of privilege seeking to have the suit transferred to Rusk County, Texas for trial. In reply appellants filed their controverting affidavits seeking to retain venue in Dallas County, under Subdivisions 4, 23, 27 and 29a of Art. 1995, Vernon's Ann.Civ.St. Only Barbara June Muncy and her husband Charles Muncy have appealed from the order sustaining the plea of privilege.

### EVIDENCE

On the early afternoon of September 15, 1960 appellee Alice Hudnall Lane was driving a 1960 model Chevrolet four-door automobile which Mrs. Lane and her husband had purchased new on August 27, 1960. Sitting to the right of Mrs. Lane on the front seat was her mother Mrs. Nellie Hudnall. On the back seat was her five year old son.

Mrs. Lane parked the car head-in at an angle against the curb on the Main Street in Kilgore, Texas in front of Duncan's Variety Store. The curb at this point is six to eight inches in height. The sidewalk is sixteen to eighteen feet in width.

---

Jones, Brian & Jones, Marshall, and Wm. Hurwitz, Longview, for appellants.

Gordon Wellborn, Henderson, Burford, Ryburn & Ford, Spencer C. Relyea, III, Strasburger, Price, Kelton, Miller & Martin, and W. Richard Davis, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from an order sustaining a plea of privilege.

After parking the car Mrs. Lane took the ignition key from the ignition switch. She testified that she thought she had turned the switch off, but the evidence is plain that she had not done so. The 1960 model Chevrolet was so designed and constructed that it was possible to take the ignition key from the switch without turning off the motor and without taking the car out of gear. That is evidently what happened on this occasion, for there is uncontradicted testimony that the motor was still running after Mrs. Lane had taken the ignition key from the switch and had alighted from the car, unlocked the rear door, and taken her young son from the rear seat.

Meantime Mrs. Hudnall had found that she could not leave the car from the right side where she had been sitting because another car had been parked so close that the door on the right side would not open wide enough to enable her to make her exit. Therefore she slid across the front seat from right to left in order to leave the car through the front left door.

While Mrs. Hudnall was attempting to leave the car through the left front door, the car motor, which had been running quietly, suddenly and with a loud roar began running "wide open". At the same time the car lurched and started in motion, bounced against the curb two or three times, then jumped the curb, ran across the sidewalk against the front wall of Duncan's Variety Store, where it again bounced two or three times before some unknown person either cut off the motor or threw the car out of gear.

Unfortunately, appellant Mrs. Barbara June Muncy was a sidewalk pedestrian in front of Duncan's Variety Store when the runaway car crossed the sidewalk. She was pinned against the front wall of Duncan's Variety Store and sustained serious injuries. One of her legs was almost severed and later had to be amputated. She sustained other injuries.

Did Mrs. Hudnall inadvertently step on the accelerator as she was sliding along the front seat from right to left in order to make her exit through the left front door? The accelerator pedal is cradled beside a hump in the middle where the drive shaft goes back under the floor board. In a deposition Mrs. Hudnall testified that she did not know whether she had stepped on the accelerator. She does not drive an automobile and does not know the brake pedal from the accelerator pedal. She did not remember whether she slid across the front seat feet first or body first. She testified that she did not know whether she was partly out of the car when it suddenly burst into action. However, she also testified that she thought she had one leg in the car at the time, which must have been her right leg. To get out on the left side she had to slide under the steering wheel with her body.

There is some disagreement between counsel as to Mrs. Hudnall's testimony concerning whether she had "frozen" onto the accelerator, that is, whether she had pushed the accelerator to the floor and kept it there continuously with her foot. In view of this disagreement we believe it well to quote her testimony in regard to the subject:

"Q You know that you were planning or acting in the plan of moving your feet from the passenger's side of that car over to the driver's side?

"A Yes.

"Q And it was then that the automobile lurched and started up, you know that?

"A I know that it did lurch.

"Q And you know that it lurched after you started to move, don't you?

"A Yes.

"Q And you know that you didn't freeze or stick your foot on the accelerator and hold it down, don't you?

"A I don't know the accelerator from the brakes.

"Q Then you know that you didn't have your foot on anything there holding it down, don't you?

"A I did not.

"Q Ma'am?

"A I did not.

"Q You do know that. Thank you. Now, was the door open on the driver's side when you were attempting to get over to get out?

"A Yes."

There is testimony to the effect that after the car burst into action the roar of the engine and the motion of the car and the wheels were continuous and steady.

Davis Smith testified that his company had sold the car to the Lanes and had given it the usual pre-delivery inspection before delivering it to them and had found nothing wrong with it.

Alvin Doyle, Jr., an automotive expert, testified at some length concerning the design and construction of the 1960 model Chevrolet and the linkage system between the accelerator and the carburetor, including the spring whose function it is to bring the accelerator back to position when pressure on it is released. In connection with his testimony several exhibits were introduced including an actual carburetor of the same model as that used in the Lanes' automobile. With the help of these exhibits Doyle described the various parts in the linkage system by which movement of the accelerator pedal is communicated to the accelerator and the transmission whereby the speed of the vehicle is regulated. He designated a number of points of friction and resistance in the carburetor and the transmission linkage. He further testified that the car, while parked with the motor running, would not have jumped the curb if the throttle had not in some way been opened with the car in gear.

Doyle's testimony also includes this question and answer:

"Q On the next assumption, Mr. Doyle, let's assume all of the facts I have stated to you and that the passenger instead of freezing on the throttle, was tramping on it; would it or not have remained stuck and in a continuous roar under the mechanical make-up of that model of Chevrolet if the throttle had been tramped on or jiggled?

"A No."

Steve Selph, an automobile mechanic, towed the car after the accident to the Center Chevrolet Company at Kilgore, Texas, where it was stored for a time. Selph testified that he checked the car after the accident to see if anything was wrong with it. He checked the transmission to see if it would move or hang in gear, tested the accelerator linkage to see if it was working, inspected the carburetor and the gasoline feed, and operated the foot feed with the motor running. He found nothing wrong.

## ADMISSIONS OF GENERAL MOTORS CORPORATION

In response to requests for admissions General Motors Corporation made certain answers which appellants assert are important in regard to the question whether appellants made out a bona fide cause of action against General Motors Corporation. Some of these admissions are:

(1) General Motors Corporation designed, manufactured, assembled and constructed the Chevrolet automobile sold by Smith Chevrolet Company to the Lanes, which automobile was involved in the accident in question.

(2) The said automobile was designed and constructed to permit (a) withdrawal of the ignition key with the ignition switch in an "on" position without stopping the motor, and (b) withdrawal of the key with the ignition

switch in "on" position and the car in drive gear without stopping the motor.

(3) The said automobile was designed (a) to prevent the key from being removed from the ignition switch when said switch was in "off" position, and (b) to prevent the key from being removed from the ignition switch when in "off" position to guard against leaving the ignition switch in "off" position but not locked.

(4) The said automobile was designed and constructed (a) without an indicator light to come on for the specific purpose of warning when the ignition key is removed from the ignition switch in an "on" position when (A) such switch is in "on" position and (B) when such switch is in "on" position and the motor is running.

(5) The automobile was designed and constructed without a buzzer to sound a warning for the purposes described in (4) above.

(6) A simple and uncomplicated design in construction of the automobile could have prevented removal of the ignition key from the ignition switch (a) when the switch is in "on" position; and (b) when the switch is in "on" position with the motor running.

(7) General Motors Corporation installed on some of its 1960 model cars other than Chevrolets and Cadillacs (a) an indicator light to show when the ignition switch is turned to "on" position if the parking brake is not released; (b) a safety buzzer which may be pre-set to any desired speed to warn when the speed should be reduced; and (c) an ignition switch with an "ACC" position, which position (A) permits the use of the radio and other accessories without having the ignition on; (B) prevents removal of the ignition key when the switch is in on "ACC" position; and (C) prevents re-

moval of the ignition key when in "ACC" position should the radio be left on accidentally.

(8) General Motors Corporation could have installed devices on its 1960 model Chevrolets similar to the devices described in (7) above.

## OPINION

Appellants' first five points of error are in substance as follows: (1) it was error to sustain the pleas of privilege on the theory that appellants' pleading and proof failed to show (a) General Motors Corporation was a resident of Dallas County, Texas; (b) a bona fide cause of action against General Motors Corporation; and (c) a joinable cause of action against all defendants within the meaning of Subdivision 4, of Art. 1995, VACS; (2) it was error to sustain the pleas on the theory that appellants failed to plead and prove that General Motors Corporation had an agency or representative in Dallas County within the meaning of Subdivisions 23 and 27 of Art. 1995, VACS, and that appellants failed to prove that appellees are necessary parties within the meaning of Subdivision 29a of Art. 1995, VACS; (3) there is no evidence to support the judgment; (4) the evidence is insufficient to support the judgment; and (5) the judgment is so against the great weight and preponderance of the evidence as to render the judgment manifestly unjust.

■ The third, fourth and fifth of the above points are too general to require our consideration, therefore we shall not discuss them individually or separately. Phillips v. Le Gallez, Tex.Civ.App., 329 S.W.2d 922; Redman v. Cooper, Tex.Civ.App., 160 S.W.2d 318; Universal Life Insurance Co. v. Wallace, Tex.Civ.App., 149 S.W.2d 662. However, appellants' first point requires a review of the evidence, so the purpose of the second, third and fourth points will in effect be accomplished.

Subdivision 4 of Art. 1995, VACS, provides that if two or more defendants reside

in different counties, suit may be brought in any county where one of the defendants resides.

Our courts by judicial construction have required plaintiffs who seek to invoke Subdivision 4 to establish certain venue facts which are not specified in the Statute. In addition to proving that one of the defendants resides in the county where suit is pending the plaintiff must prove that the defendants are properly joined and that plaintiff has a bona fide cause of action against the resident defendant. Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300; Park v. Wood, 146 Tex. 62, 203 S.W.2d 204. Appellees concede that appellants have adequately met the first two of the above requirements: that General Motors Corporation for venue purposes is a resident of Dallas County, Texas, where suit is pending, and that the non-resident defendants are proper parties to this suit. But appellees contend that appellants have failed to prove a bona fide cause of action against General Motors Corporation which admittedly manufactured the automobile involved in the accident. It is conceded that General Motors Corporation had no privity of contract with appellants.

Formerly the general rule seems to have been that a manufacturer of an article was not liable to a person with whom the manufacturer had no privity of contract when such person was injured as a result of negligence in the manufacture of the article. However, the old rule has either been abandoned or modified in most jurisdictions in such manner as to admit of many exceptions. For discussion of the subject see Flies v. Fox Brothers Buick Co., 196 Wis. 196, 218 N.W. 855, 60 A.L. R. 357; MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050; United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87; Yaun v. Allis-Chalmers Mfg. Co., 253 Wis. 558, 34 N.W.2d 853; and 65 C.J.S. Negligence § 100, pp. 618–633.

Appellants' first contention under their point No. one is that General Motors Corporation was negligent and liable to appellants for designing and constructing the Chevrolet car as it is described under the heading "ADMISSIONS OF GENERAL MOTORS CORPORATION" hereinbefore set out. We find ourselves unable to agree with appellants.

We believe that a correct statement of the rule in regard to a manufacturer's liability in this particular is that which is found in "Restatement of the Law of Torts", page 1073, § 395:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its portable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

See also same text on page 1084, § 398; Johnson v. Murray Co., Tex.Civ.App., 90 S.W.2d 920; J. C. Lewis Motor Co. v. Williams, 85 Ga.App. 538, 69 S.E.2d 816; Blitzstein v. Ford Motor Co., 5 Cir., 288 F.2d 738; Carpini v. Pittsburgh & Weirton Bus Co., 3 Cir., 216 F.2d 404; United States Radiator Corp. v. Henderson, 68 F.2d 87; Hartmon v. National Heater Co., 240 Minn. 264, 60 N.W.2d 804.

However, the undisputed facts of this case fail to bring it within the above rule. Mrs. Lane was well aware of the manner in which the ignition key and the switch were designed and constructed. She could have taken the car out of gear and stopped the motor from running while the car was parked. In fact she thought she had done so. She was not using the car in the manner and for the purpose for which it was intended—at least appellants have failed

to prove that the car was being so used. There is no showing in this case that the car in question was dangerous if used properly and in the manner and for the purpose for which it was intended.

Furthermore, the car was not being lawfully used. Art. 6701d, § 97, VACS, expressly provides that no person driving or in charge of a vehicle shall permit it to stand unattended without first stopping the engine, and effectively setting the brake thereon. In the absence of evidence to the contrary we shall not presume that General Motors Corporation designed the car for use in a manner violative of the law, or that it should have anticipated such illegal use as probable.

■ Appellants' second contention under their point No. one is that the automobile was defectively made in that the accelerator would "stick" when wide open instead of coming back to its proper position when pressure was released on the accelerator pedal. Appellants claim that in this regard they made out a case against General Motors Corporation with independent evidence. In support of this contention appellants point to the testimony of Mrs. Hudnall that she did not "freeze" on the accelerator pedal, the testimony of another witness that the motor did not throttle down after it jumped the curb, but stayed at a steady grind and roar, and the testimony of Doyle, the automotive expert, who in response to a hypothetical question gave his opinion that if Mrs. Hudnall did not "freeze" onto the accelerator pedal with her foot, but if the pedal was tramped on or jiggled the accelerator would not have remained stuck and the motor would not have made a continuous roar.

Again we find ourselves unable to agree with appellants. Mrs. Hudnall was an interested witness and her testimony, though uncontradicted, did no more than raise a fact issue. We must presume that the trial court found all fact issues in such a way as to support the judgment. If the court disbelieved Mrs. Hudnall's testimony, there was no evidence that she did or did not "freeze" onto the accelerator pedal with her foot. In such case there was no basis for the hypothetical question on which the automotive expert based his opinion. The testimony is that the car was given a predelivery inspection by the Smith Chevrolet Company of Rusk, Texas and nothing was found wrong with it. There is also testimony of the automobile mechanic Selph that he tested the accelerator linkage after the accident and inspected the accelerator and found nothing mechanically wrong. The court must have made an implied finding that the accelerator did not stick as a result of any defect or malfunction in its manufacture, and we are bound by said implied finding. James v. Drye, 159 Tex. 321, 320 S.W.2d 319.

Appellants' first point on appeal is overruled.

In connection with their second point appellants take the position that they have proved a cause of action against the Lanes by showing that Mrs. Lane left the car unattended without cutting the motor off, against Mrs. Hudnall by showing that she negligently stepped on the accelerator in attempting to make an exit from the car, and against Smith by showing that he sold the Lanes a car designed to permit removal of the ignition key without cutting the motor off, and the accelerator and the linkage in such condition that it would stick or hang in open position. They further take the position that the above named parties are necessary parties to this suit as required in order to bring the case within the terms of Subdivision 29a of Art. 1995, VACS. They also take the position that General Motors is a foreign corporation with an agent and office in Dallas County, Texas, therefore the case comes within the terms of Subdivisions 23 and 27 of the Statute.

In support of their contention that the Rusk County defendants are necessary parties to this action appellants cite us to Ladner v. Reliance Corporation, 156 Tex.

158, 293 S.W.2d 758 and Hill v. Melton, Tex.Civ.App., 311 S.W.2d 496, decided by this Court.

In our opinion in the latter case, of which opinion the present writer was the author, though we reversed the judgment on other grounds, we did hold that where two defendants were sued as joint tort-feasors and the suit was maintainable where one defendant resided, the other defendant was a necessary party to the suit under Subdivision 29a, Art. 1995, VACS. We cited the Ladner case by our Supreme Court as authority for our holding. In the Ladner case the Supreme Court said:

"Where the plaintiff, if he recovers, will be entitled to a joint judgment against two defendants * * * the other defendant is a necessary party within the meaning of Subdivision 29a."

Upon reconsideration we have concluded that we gave the statement in the Ladner case too broad an interpretation and to that extent we were in error in our holding in Hill v. Melton, supra. In the Ladner case the Supreme Court was considering the question of contractual liability, not the liability of joint tort-feasors. This is true also of the two cases cited by the Supreme Court in support of its holding as above quoted.

There has not been a unanimity of holdings by our appellate courts in construing Subdivision 29a of Art. 1995, VACS. In First National Bank in Dallas v. Pierce (Comm.App. op. adopted) 123 Tex. 186, 69 S.W.2d 756 it was said that "necessary parties" is used in the new exception in the strict sense of the term as embracing "only those persons without whose presence before the court no adjudication of any of the subject matter involved in the litigation can be had."

But in Union Bus Lines v. Byrd, 142 Tex. 257, 177 S.W.2d 774, our Supreme Court said that the rule announced in First National Bank in Dallas v. Pierce, supra, "was too restrictive, and is not now followed by this Court". The correct rule was said to be that the "other defendant is a necessary party within the meaning of Section 29a if the complete relief to which plaintiff is entitled under the facts of the case as against the defendant properly suable in that county can be obtained only in a suit to which both defendants are parties." The opinion cited Pioneer Building and Loan Ass'n v. Gray, 132 Tex. 509, 125 S.W.2d 284; Tarrant v. Walker, 140 Tex. 249, 166 S.W.2d 900.

The rule stated in the Union Bus Lines case, supra, has since been followed in many cases; but the rule there stated is itself susceptible to differing interpretations, as will be seen by a study of appellate opinions on the subject.

We have concluded that under the facts of the present case appellants, if they recover, can obtain the full relief to which they are entitled without joining the Rusk County defendants, therefore said defendants, appellees here, are not necessary parties within the terms of Subdivision 29a, Art. 1995, VACS. Lewis Boggus Motors, Inc. v. Hill, Tex.Civ.App., 340 S.W.2d 957; Liles v. Winters Ind. School District, Tex.Civ.App., 326 S.W.2d 182; Coleman County Tel. Co-op. Inc. v. Cunningham, Tex.Civ.App., 318 S.W.2d 461; Jaques Power Saw Co. v. Womble, Tex.Civ.App., 207 S.W.2d 206; Rogers v. Ft. Worth Poultry & Egg Co., Tex.Civ.App., 185 S.W.2d 165; Roberson v. Hunt, Tex.Civ.App., 179 S.W.2d 315; Tarrant v. Walker, 140 Tex. 249, 166 S.W.2d 900. Appellants' second point on appeal is overruled.

Appellants' sixth point complains of the exclusion of certain evidence. Mrs. Lane in her deposition testified that after the accident the car was repaired by Smith Chevrolet Company. She had insisted that a new carburetor be put in. When Mr. Harrington brought the car back to Mrs. Lane, Mr. Harrington told her that a new

carburetor had been put in. Objection was made in behalf of Smith to this testimony on the grounds that such testimony was hearsay, that Mrs. Lane is not an expert and that the answers were an opinion and conclusion on her part. The objection was sustained.

Appellants say that the testimony should have been admitted on the ground that admissions of an agent are admission of his principal.

We see no error in the court's ruling. Mrs. Lane herself testified that a new carburetor was put in at her insistence. This certainly does not convict Smith Chevrolet Company of selling and delivering a car with a defective carburetor. The testimony of Doyle, the automotive expert, had to do mainly with the linkage system, not the carburetor itself.

In any event the error, if it was error, was harmless, and under Rule 434, Texas Rules Civil Procedure, does not furnish a basis for us to reverse the judgment sustaining the pleas of privilege. Appellants' sixth point is overruled.

The judgment of the trial court is affirmed.