### 43756, 43757. FRIEND v. GENERAL MOTORS CORPORATION et al. (two cases).

JORDAN, Presiding Judge. The Friends, husband and wife, filed separate actions against General Motors Corporation and Fred Jones, d/b/a Fred Jones Chevrolet Company, for damages arising out of the same incident. In 1962 the husband purchased from Jones a new Greenbriar truck manufactured by General Motors. In 1963, while he was driving in the rain on a public highway, with his wife as a passenger on the right front seat, and with a load of luggage and photographic equipment weighing less than 300 pounds in the storage area behind the front seats, he lost control of the vehicle. It left the highway and the front end struck a culvert on the shoulder of the highway. The seats were secured to the vehicle by "one small bolt" and the impact of the vehicle with the culvert caused the load behind the seats to move forward and strike the rear of the seats. This second impact caused the seats to fold over, injuring the occupants. The husband seeks recovery on the basis of a breach of implied warranty, and the wife seeks recovery on the basis of negligence. The trial court dismissed both petitions, and the plaintiffs appeal. *Held:*

1. The claim of error with respect to dealer liability, although properly raised in each appeal, is not supported in the brief of either plaintiff by citation or argument, and is therefore deemed to be abandoned. Rule 17 (c) (2), this court. This leaves the orders of the court dismissing the actions with respect to Jones undisturbed, and eliminates him as a party defendant.

2. The husband alleged by amendment, apparently intending to

refer to the pleaded fact that the front seats were secured by "one small bolt," that the vehicle was unmerchantable and not reasonably suited for the use intended, and "that the defect in the design, manufacture and installation of said rear [sic] seats was one that could not be discovered by petitioner . . . by the use of reasonable caution . . . and that [he] did not know of said defect nor was same called to his attention either directly or indirectly."

What does the manufacturer of an automobile impliedly warrant? Under the terms of the 1957 Act (Ga. L. 1957, p. 405; former *Code Ann.* § 96-307) in effect in 1963 at the time of the incident, the manufacturer (absent any contract to the contrary, and none is here shown) warranted that the vehicle is merchantable and reasonably suited to the use intended, and that the manufacturer knows of no latent defects undisclosed. It is settled law that the use intended means the use for which the article is manufactured and commonly intended by the manufacturer. *Atlanta Americana Corp. v. Sika Chemical corp.*, 117 Ga. App. 707 (5) (161 SE2d 342), and cases there cited. "The maker of an article for sale or use by others must use reasonable care and skill in designing it and in providing specifications for it so that it is reasonably safe for the purposes for which it is intended, and for other uses which are foreseeably probable. . . By and large the standard of safety of goods is the same under the warranty theory as under the negligence theory." 2 Harper & James 1541, 1584, §§ 28.4, 28.22.

We think that with respect to a combination cargo and passenger vehicle manufactured and marketed for use on the public highways this means a vehicle so constructed and designed as to provide the operator and a passenger sitting beside him with reasonable safety from injury by the collapse of the front seats caused by the impact of shifting cargo in the rear produced by a sudden stop, an occurrence which may reasonably be foreseen and anticipated in normal use on public highways, at the same time recognizing that this does not require the manufacturer to provide a "collision safe" vehicle, that the manufacturer is not an insurer of the safety of an operator or passengers, and that the operator and others are not excused from the exercise of ordinary care to prevent injury.

Under former pleading requirements all the plaintiff had to

show was "that the automobile was not reasonably suited for the purposes for which it was commonly intended and that because of its unsuitability he was damaged." *Wood v. Hub Motor Co.*, 110 Ga. App. 101, 105 (137 SE2d 674). The new pleading requirements of the Georgia Civil Practice Act are based on the federal rules, as to which Mr. Justice Black said, "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U. S. 41, 45 (78 SC 99, 2 LE2d 80). See also *Harper v. DeFreitas*, 117 Ga. App. 236 (1) (160 SE2d 260). Under such simplified procedure, the complaint merely provides notice of the claim, and the parties have liberal opportunity for discovery and other pre-trial procedures to disclose more precisely the basis of both the claim and the defense. Viewing the husband's petition in this light we cannot say that beyond doubt, as a matter of law, the plaintiff shows that he cannot prove facts which would authorize recovery.

3. There is no material difference in the wife's petition, other than the theory of recovery, and allegations in support thereof, to the effect that the manufacturer was negligent in marketing a vehicle which could not be used with safety on account of the seat installation, and in failing to warn of the dangers involved. Non-statutory negligence as the proximate cause of injuries is a matter which the courts ordinarily refuse to determine as a matter of law, and it cannot be said that the allegations of the plaintiff eliminate, beyond doubt and as a matter of law, negligence on the part of the manufacturer as the proximate cause of the plaintiff's injuries. Viewing the wife's petition under the rules set forth in the preceding division, her petition is also not subject to dismissal for failure to state a claim.

4. The trial judge erred in dismissing the petitions as failing to state a claim against General Motors Corporation.

*Judgments reversed as to General Motors Corporation, otherwise affirmed. Felton, C. J., Bell, P. J., Hall and Deen, JJ., concur. Eberhardt, J., concurs specially. Pannell, Quillian and Whitman, JJ., dissent.*

Argued July 3, 1968—Decided October 22, 1968—
Rehearing denied December 4, 1968—

*Wall, Armstrong & Fuller, Alford Wall,* for appellants.

*Greene, Buckley, DeRieux, Moore & Jones, Ross L. Malone, Otis M. Smith, Ferdinand Buckley, James A. Eichelberger, Neely, Freeman & Hawkins, John V. Skinner, Jr., Thomas H. Harper, Jr.,* for appellees.

Eberhardt, Judge, concurring specially. As I view these cases the question for decision is whether the complaint states a claim on which relief can be granted and, if so, whether there was error in sustaining a motion to dismiss.

I think the complaints state claims sufficiently to meet the requirements of the Civil Practice Act. *Harper v. DeFreitas,* 117 Ga. App. 236 (160 SE2d 260).

While I must agree with Judge Pannell that the manufacturer did not specifically intend that the vehicle should be driven off the highway into a concrete culvert, it must be conceded that it did intend that it be driven in traffic with accompanying hazards, one of which may be that for some reason it may be driven off the road and strike a culvert. For example, a tire may suddenly go down, or some foreign object on the road may adversely affect the steering.

"The nature of the duty which an automobile manufacturer owes to the users of its products is to design the automobile so that it is reasonably fit for the purposes for which it was intended. Evans v. General Motors Corp. [359 F2d 822, cert. den. 385 US 836, 87 SC 83, 17 LE2d 70]: Gossett v. Chrysler Corp., 359 F2d 84 (6 CCA 1966); Kahn v. Chrysler Corp. [221 FSupp. 677, and cases cited] relying on Muncy v. General Motors Corp., 357 SW2d 430 (Tex.Civ.App. 1962). This duty does not extend to require a manufacturer to design his product so that it is accident proof or foolproof. Gossett v. Chrysler Corp., supra; Evans v. General Motors Corp., supra. . . [T]he defendant had no duty to design an automobile that could withstand a high speed collision and maintain its structural integrity. It would require tenuous reasoning to

broaden the implied warranty of 'fitness for intended use' to an implied warranty of 'fitness to survive a collision.' " Willis v. Chrysler Corp., 264 FSupp. 1010. "[N]o principle of warranty or negligence required [General Motors] to provide the very best means of protection. . . Failure to adopt the most modern, or even a better safeguard, did not render the manufacturer liable" where what was used did afford a reasonable prevention of injury. Brown v. General Motors Corp., 355 F2d 814. "[I]t is not of itself negligence to use a particular design or method in the manufacture or handling of a product or doing a job which is reasonably safe and in customary use in the industry, although other possible designs, whether in use in the industry or not, might be conceived which would be safer. . ." Day v. Barber-Colman Co., 10 Ill. App. 2d 494, 508 (135 NE2d 231). Misuse of a product is beyond the scope of implied warranty. Pritchard v. Liggett & Myers Tobacco Co., 350 F2d 479, 485.

"While liability in warranty is said to be strict, this does not mean that goods are warranted to be foolproof, or incapable of producing injury, or incapable of deterioration into an unreasonably dangerous state. By and large, the standard of safety of goods is the same under the warranty theory as under the negligence theory. In both actions the plaintiff must show (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some special use which was brought to the attention of the defendant, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands."[1] 2 Harper & James, The Law of Torts, 1584, § 28.22. Another way of stating it is used by Judge Kiley in his dissent to Evans v. General Motors Corp., 359 F2d 822, 826, "General Motors' duty was to use such care in designing its automobiles that reasonable protection is given purchasers against death and injury from accidents which are expected and foreseeable, yet unavoidable by the purchaser despite careful use."

---

[1]Other considerations and differences in the two approaches are pointed out, however, in Taylor, Liability for Manufacturers, 2 GLR 530, at 536.

Pannell, Judge, dissenting. "The manufacturer of any personal property sold as new property, either directly or through wholesale or retail dealers, or any other person, shall warrant the following to the ultimate consumer, who, however, must exercise caution when purchasing to detect defects, and, provided there is no express covenant of warranty and no agreement to the contrary: 1. The article sold is merchantable and reasonably suited to the use intended. 2. The manufacturer knows of no latent defects undisclosed." Ga. L. 1957, p. 405, Section 1 (former *Code Ann.* § 96-307.) This court has interpreted this Code section as follows: "'Use intended,' as used in the Code section relied upon, means not the particular use intended by the purchaser, even though known to the seller, but means only such uses as the article may have been manufactured for by the manufacturer." *Mons v. Republic Steel Corp.,* 113 Ga. App. 135 (147 SE2d 473). Under the facts of this case, the automobile in question was not being used for a purpose intended when it was driven off the highway into a concrete abutment. The petition as worded shows that the accident was not a result of any defect in the automobile or its construction, but was caused by the unintended use of the automobile. It is well settled that so long as an allegation remains in a plaintiff's petition, such allegation is conclusive against him. *Carter v. General Finance &c. Corp.,* 96 Ga. App. 423, 426 (100 SE2d 99). Georgia is not one of the strict liability states in product liability cases.

While I have no argument with the rule as set out in Conley v. Gibson, 355 U. S. 41, 45, or the rule as set out in *Harper v. DeFreitas,* 117 Ga. App. 236 (1) (160 SE2d 260), I think the true rule is set out in *Poole v. City of Atlanta,* 117 Ga. App. 432 (2) (160 SE2d 874): "'A (complaint) may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, *or in the disclosure of some fact which will necessarily defeat the claim.* But a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.' 2A Moore's Federal Practice 2245, § 12.08. De Loach v. Crowley's, 128 F2d 378, 380."

"A manufacturer is not under a duty to make his automobile accident proof or foolproof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all." Campo v. Scofield, 1950, 301 N.Y. 468, 95 NE2d 802, 804. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law. Campo v. Scofield, supra, 805. Evans v. General Motors Corp., 359 F2d 822, 824 (U.S.C.A. 7th 1966). Mrs. Friend's case, which is under the theory of negligence of the manufacturer and not under the implied warranty theory as is the case of her husband, would, under the above rules, be subject to dismissal under the demurrer which was treated as a motion to dismiss for the same reasons that the manufacturers were not required to insure against the possibility of injury through misuse of their product. I would affirm the lower court's dismissal.

I am authorized to state that Judges Quillian and Whitman concur in this dissent.