285 So.2d 744 (1973)
HAMILTON FIXTURE COMPANY, INC., Defendant-Appellant,
v.
Dr. Thomas J. ANDERSON and Katherine B. Anderson, Plaintiffs-Appellees.
No. 47223.
Supreme Court of Mississippi.
November 19, 1973.
Rehearing Denied December 10, 1973.
*745 M.M. Roberts, S. Wayne Easterling, Robert M. Sullivan, Hattiesburg, for defendant-appellant.
Deavours, Weems & Gilchrist, Laurel, for plaintiffs-appellees.
PATTERSON, Justice:
This appeal arises from the Circuit Court of Jones County, Second District, where Dr. Thomas J. Anderson and his wife were awarded a judgment of $9,322.55. The judgment resulted from damages to their home caused by excessive moisture emitted into it by a humidifier attached to the heating and air conditioning system. This system, including the humidifier, was installed by Hamilton Fixture Company, Inc., defendant-appellant.
The plaintiffs' declaration is founded upon the theory of strict liability in tort as distinguished from conventional notions of negligence emanating from either the common or statutory law. The answer of Hamilton Fixture Company, Inc., hereinafter Hamilton, admits the installation of the air conditioning system, including the humidifier, but avers that the installation was accurately and properly effected without fault and that it was guilty of no negligence which contributed to the injuries complained of and that no recovery should be had against it.
The evidence developed during the course of the trial followed generally the theories set forth in the declaration and answer to which the jury responded by a verdict for the plaintiffs. Since there is little controversy relating to damages to the house and the sum awarded therefor, we direct our attention to the application of the principles announced in State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966), to the present factual situation.
The Andersons contracted with Howard Johnson, a realtor, for the purchase of a lot and the construction of a house thereon in the city of Laurel. Johnson in turn contracted with W.C. Rigney to construct the house and with Hamilton to furnish and install the central heating and air conditioning system. When the house was in its final phase of construction and when the installation of the heating and air conditioning system was virtually completed, the Andersons decided to have a humidifier included as a part of the system. Hamilton was engaged for and undertook this project, including design of the system, the supply of the component parts and materials and the installation work.
The structure was completed in July 1965 at which time the air conditioning system was tested by Hamilton and found to be functioning properly, no defects being observed at the time in either the air conditioning unit or the humidifier. Thereafter the home was occupied by the Andersons. The humidifier was not initially used, but was turned on in October when heat was needed for comfort.
In January 1966 the Andersons observed evidence of excess humidity within the home. This was manifested by icing on the inside of the windows and wet carpets. Thereafter, numerous other abnormalities made their appearance, including, but not limited to, the following: Some of the doors could not be opened or closed; the steps to the stairway began to squeak and come loose; some of the studs in the house warped; the sheetrock cracked; the interior *746 paneling swelled and "bucked" out; exposed metal fixtures rusted and some of the furniture came unglued and began to disintegrate. Alarmed by these conditions the Andersons sought the help of Rigney who had constructed the house. Since he was ill, he advised them to contact a local air conditioning dealer who had been in the employ of Hamilton when the air conditioning system and humidifier were installed. The dealer inspected the condition of the residence and concluded the humidifier should not be further used. In accord with this it was turned to its "off" position, but it was not otherwise altered.
In February, James Hamilton, president of the defendant company, and Rigney inspected the Anderson home. They were of the opinion the damage was the result of excess moisture though they were unable to determine its source.
W.W. Drinkwater, a consulting engineer, was then engaged to find the source and cause of the excess moisture. He made an intense investigation of the house and conducted tests from which he concluded the humidifier was the source of the trouble. It was his opinion, after he had qualified as an expert witness, that the design of installation was the cause of the humidifier's malfunction.
He testified for the appellees that several elements of the design were contrary to generally accepted engineering practices. Included in his testimony were statements that the humidifier was improperly located on the warm air side of the furnace downstream from the return air filter. There were no air-turning vanes in the ducts and a humidistat was not installed to control the level of moisture emitted. As the result of the placement of the humidifier and the omission of the air vanes and humidstat, both permitted by the design, he approximated that 360 gallons of excess water were discharged into the structure. He illustrated by stating the moisture content of the wood from which the house was constructed was 30% to 35% as contrasted with a norm of 12%. It was his opinion that had the humidifier system been installed in accord with proper design the excess moisture would not have entered the house.
James Hamilton, also a graduate engineer and president of Hamilton, testified that he designed the system and that the humidifier was placed on the intake side of the furnace. He explained that it was installed there because the addition of the humidifier was an afterthought on the part of the Andersons and due to the nearness of completion of the air conditioning and heating system, this was the best and only available location for it.
Jessie Hamilton, service manager of Hamilton, testified that the humidifier was installed at an optional location permitted by the manufacturer's instructions and as situated the moisture emitted from it would be less than if it had been placed on the opposite and downstream side of the furnace. He also stated there was no need for a humidistat since this particular unit had a control built within it.
No dispute exists concerning the air conditioning system by Carrier and the humidifier by Arklon Products being properly constructed to correct standards by reputable manufacturers.
In seeking reversal Hamilton contends the trial court erred in not finding for it at the termination of the plaintiffs' testimony and in refusing a peremptory instruction at the conclusion of all of the evidence, as well as admitting incompetent evidence. The prime contention, however, is that the court erred in granting the plaintiffs instructions based upon the theory of strict liability in tort and refusing the defendant a number of instructions upon its theory of negligence. This presents the issue of whether a defendant may be subject to damages under strict liability in tort unrelated to negligence in its ordinary meaning.
We are of the opinion that State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966), disposes of this issue. We there held that strict liability in *747 tort is not dependent upon either warranty or negligence for its existence. We adopted the standards set forth in Section 402A of the American Law Institute Restatement of Torts (Second) insofar as it applies to a manufacturer of a product and to a contractor who builds and sells a house with the product in it. The adoption in terms was:
Special Liability of Seller of Product for Physical Harm to User or Consumer 
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. (189 So.2d at 118)
The Court did hold, however, that the rule was not exclusive and does not preclude liability based upon an alternative ground of negligence of the manufacturer or vendor where such negligence can be proved.
We first note, in applying these standards to the present evidence for the purpose of determining whether the granted instructions properly informed the jury of the issues to be resolved by them, that the system, including the humidifier, was the finished product of Hamilton. It was delivered to the Andersons for their use without change in its condition from the time of completion. It did not function in accord with its intended purpose and the property of the plaintiffs was injured thereby. These instructions were patterned precisely under State Stove, supra, and we conclude there was no error by the trial court in granting them. These preliminary rules or standards being resolved affirmatively, there remain for the jury's resolution the more cogent question presented by Section (1) of the quotation and that is, was the product in such defective condition that it was unreasonably dangerous to the user or his property. Again, it is our opinion that this vital issue was properly submitted to the jury by an instruction in accord with the evidence.
The appellant contends conversely, however, that the court erred in refusing certain instructions which it requested upon the theory of negligence. We think this contention untenable since a principle in addition to that permitting an alternative action in negligence was announced in State Stove, supra, and that is that the rule of strict liability applies even though "(2)(a)  the seller has exercised all possible care in the preparation and sale of his product." It is apparent from the evidence that Hamilton exercised reasonable care in the design and installation of the humidifier, but nevertheless it was delivered in a defective condition which the jury found under the instructions granted to have been unreasonably dangerous to the property of the user. We do not think that the defect in design necessarily imports negligence to Hamilton. The evidence portrays quite clearly that the design of installation was the product of deliberate calculation exercised in a reasonable and prudent manner. However, the reasonable and prudent standard, "all possible care," is not vital to a cause of action in strict liability in tort in the sense that there is no need to prove the manufacturer was negligent. We therefore conclude that the court did not err in refusing the negligence instructions contended for. Moreover, we notice, *748 though not necessary to this opinion, that the defendant obtained several instructions directed either to the lack of negligence or fault on its part which we believe diminishes somewhat the force of its contention that the court erred in refusing other instructions directed to the same theory.
We find the assignments for reversal relating to the insufficiency of the evidence to be unavailing since the record depicts ample evidence to support the verdict. The remaining assignment alluding to the expertise of a witness is of course largely left to the discretion of the trial judge and since we are unable to state that he abused this discretion in permitting the witness to testify as an expert, we conclude there was no error in so doing.
Affirmed.
GILLESPIE, C.J., and INZER, SMITH and SUGG, JJ., concur.