555 So.2d 53 (1989)
BILOXI REGIONAL MEDICAL CENTER
v.
Jimmie Lois DAVID.
No. 07-CA-58532.
Supreme Court of Mississippi.
December 13, 1989.
Fred Mannino, Page Mannino & Peresich, Biloxi, for appellant.
Robert H. Tyler, Denton & Tyler, Biloxi, for appellee.
Before HAWKINS, P.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the Court:
On April 2, 1982, Mrs. David, a seventy year old retiree, was visiting her husband who was a patient at the Biloxi Regional Medical Center (hereafter referred to as the center). Mr. David had been in the center for approximately five to six weeks. During that time Mrs. David had visited her husband three times a day. Normally when she came to the center she parked in the north parking lot which was a fenced in lot used by employees. To enter the building from this lot Mrs. David had to walk through an opening in the fence, across a footpath on a grass covered area, then enter the building via a service entrance near the loading area.
On April 2, Mrs. David was leaving the center after visiting with her husband during the lunch hour. She had parked in her usual place in the north parking lot. As she entered the gate leading to the parking lot she tripped or "stubbed" her toe on something in the ground. Although she stumbled she did not fall. She did not notice what she had tripped upon until the next day when she noticed a piece of concrete partially buried which was exposed several inches above the pavement. The piece of concrete was part of the paved parking lot.
Mrs. David did not begin to experience any pain until later that day when her leg *54 began to swell. She suffers from chronic diabetes mellitus and thrombophlebitis as well as a number of other ailments. As a result of these ailments she has poor circulation in her legs and it takes awhile before she begins to feel pain. She did not see a doctor until Dr. Wansley, the doctor treating her husband, noticed the swelling and advised her to have a x-ray taken. The X-ray showed no "new" fracture but found evidence of a healing fracture. An ace bandage was the prescribed treatment and Mrs. David was not hospitalized.
The pain and swelling continued until Mrs. David was admitted to the hospital. The diagnosis for the swelling was that it was caused by the thrombophlebitis and Mrs. David was discharged. On May 14, 1982, Mrs. David was admitted to the Oschner Hospital in New Orleans for treatment of inflammation and swelling in her legs. X-rays taken on May 18th discovered that Mrs. David had a "blow out" comminuted of the tarsal navicular bone and a compression fracture of the midfoot. When she was discharged on June 16, 1982, she was wearing a cast. From this injury a suit was filed against the Biloxi Regional Medical Center.
The main dispute at the trial was with the testimony of Dr. Wansley. On several occasions during his testimony Dr. Wansley was asked his opinion concerning the causal connection between the treatment rendered at Oschner and Mrs. David's accident. The center objected to these questions on the grounds that Dr. Wansley did not treat Mrs. David at Oschner and that he had not reviewed her medical records. These objections were overruled. Mrs. David's bills from Oschner concerning her treatment were admitted over the center's objection that the bills themselves were insufficient to prove a causal connection between incident and injury.
Following closing arguments the jury retired for its deliberations and returned a verdict in favor of Mrs. David in the amount of $70,000.00. A motion for a new trial was denied and the verdict entered as a judgment.

I.

DID THE COURT ERR IN ALLOWING DR. WANSLEY TO RENDER AN OPINION AS AN EXPERT TO ESTABLISH A CAUSAL CONNECTION BETWEEN MRS. DAVID'S ACCIDENT AT BILOXI REGIONAL MEDICAL CENTER AND HER TREATMENT AT OSCHNER HOSPITAL?
In its first assignment of error the center claims that it was error to allow Dr. Wansley to give testimony in the form of an opinion as to the causal connection between Mrs. David's injury and her treatment at the Oschner Hospital as well as her bills from Oschner. Dr. Wansley answered two questions relating to the causal connection between the injury and the treatment at Oschner Hospital: (1) Was Mrs. David's stay at Oschner Hospital the result of her injury sustained at the center; and (2) were the bills incurred by Mrs. David at Oschner Hospital the result of her injury sustained at the center?
With regard to the first question, Dr. Wansley was asked why an X-ray taken at Oschner on May 18, showed a fracture that did not show up on the X-ray taken at the center on May 9, 1982. Although Wansley had not seen the Oschner x-ray nor read the radiologists report he was allowed to render an opinion over objection. His opinion was that possible inflammation obscured the fracture or that since the fracture was a compound fracture it might not have been seen until calcification outlined the fracture. He stated that the Oschner x-ray was probably showing the injury Mrs. David received at the center. During direct examination Dr. Wansley was asked whether the treatment at Oschner was a result of Mrs. David's injury at the center. Again over objection he was allowed to testify that Mrs. David's treatment at Oschner was related to the accident which Mrs. David testified occurred at the center. The center relies on Mississippi Rules of Evidence 702, 703 and 705, for its objection, which state:
RULE 702. TESTIMONY BY EXPERTS

*55 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
RULE 703. BASES OF OPINION TESTIMONY BY EXPERTS
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
RULE 705. DISCLOSURE OF FACTS OR DATA UNDERLYING EXPERT OPINION
The expert may testify in terms of opinion or inferences and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.
The center is not questioning the validity of Rule 703 or 705 but the validity of the underlying facts used by Dr. Wansley in forming his opinion.
In examining the underlying facts Dr. Wansley used it should be remembered that Dr. Wansley treated Mrs. David after her injury at the Biloxi Regional Medical Center and also referred Mrs. David to Oschner Hospital when she failed to respond to treatment. He heard her state that she "stubbed" her toe in the center's parking lot and he hospitalized her because of pain and swelling of her foot. Since Dr. Wansley was not at the scene of the accident, he must rely on Mrs. David's account for his history. Knowing how Mrs. David injured her foot and that she went to Oschner's for treatment of that injury, Dr. Wansley had sufficient underlying facts for the purpose of Rules 703 and 705, Mississippi Rules of Evidence.
The second question arises with regard to Dr. Wansley answering the question of whether the bills incurred by Mrs. David at Oschner Hospital were the result of her injury at the clinic. It should be noted that Dr. Wansley's testimony was not necessary to prove that the Oschner Hospital bills were incurred because of Mrs. David's injury to her foot.
Section 41-9-119, Miss. Code Ann. (1972) as Amended, states:
Proof that medical, hospital, or doctor bills were paid or were incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.
Mrs. David's testimony that she was injured in the parking lot and the introduction of the bills which have been paid are prima facie evidence that the bills themselves were necessary and reasonable. Clements v. Young, 481 So.2d 263, 269 (Miss. 1985), and Jackson v. Brumfield, 458 So.2d 736, 737 (Miss. 1984). Thus, the casual connection between Mrs. David's injury and her treatment at Oschner's has been met regardless of Dr. Wansley's testimony.
The center claims that Mrs. David's testimony and that of the doctors are insufficient to show the causal connection between the injury and its negligence. This was not their objection at the trial. The only basis for objection to the entry of the bills offered to the trial judge was that they were not necessary and reasonable treatment for the injury she sustained. There was no reversible error in allowing Dr. Wansley to testify.

II.

DID THE COURT ERR IN GRANTING INSTRUCTION P-8?
In its second assignment of error the center argues that it was error for the trial court to grant jury instruction P-8, which reads as follows:
You are instructed by the Court that an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner, *56 either on the business of the owner or for their mutual advantage. In this case, you are instructed as a matter of law that the Plaintiff, Jimmie Lois David, was a business invitee on the hospital premises at the time of her accident on April 2, 1982.
A party in control or possession of premises is liable for injuries to an invitee caused by a dangerous condition on his premises if the owner knew or in the exercise of reasonable care should have known about the condition and failed to take measures reasonably calculated to remove the danger or warn the invitee of its existence. If you find from a preponderance of the evidence in this case that:
1. The Defendant, Biloxi Regional Medical Center, was in control or possession of the parking lot and pathway, and
2. The Plaintiff was on the Defendant's premises for a purpose consistent with the hospital business operated by the Defendant, and
3. The subject pathway constituted a dangerous condition upon the Defendant's premises, and
4. The Defendant knew or in the exercise of reasonable care should have known about the condition, and
5. The Defendant failed to take measures reasonably calculated to remove the danger, if any, or to warn the Plaintiff of its existence, and
6. The Defendant's failure to take such measures, if any, was the proximate cause or a contributing proximate cause of the Plaintiff's accident and injuries, then your verdict shall be for the Plaintiff.
The center relies on Waller v. Dixieland Food Stores, Inc., 492 So.2d 283 (Miss. 1986), as the authority for the duty owed by the occupant. In Waller we stated that the person in charge of the premises has a duty to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions not readily apparent which the occupier knows of or should know of in the exercise of reasonable care. Id. at 285-86. The center claims that subparagraph 5 of Instruction P-8 imposes a higher duty than is required by law because no one testified that the raised piece of concrete was a concealed hazard or a danger. The center further argues that even if it was an unreasonable hazard, it was not latent or concealed and therefore no warning was necessary.
However, in Litton Systems, Inc. v. Enochs, 449 So.2d 1213 (Miss. 1984), we upheld the granting of a jury instruction which stated that it was the duty of the occupant to warn of a condition even though the injured party admitted during testimony that he was aware of the hazard but could not see it at the time of his accident. Id. at 1215. Mrs. David contends that since the facts in the case at bar are similar to those in Litton Systems, then the holding in that case supports her jury instruction. In Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985), we stated:
[C]onditions are not either open and obvious or not open and obvious. Common sense and experience negates an either or categorization of such conditions. Just how open and obvious a condition may have been is a question for the jury in all except the clearest of cases. Id. at 664.
Whether the piece of concrete at the center was open and obvious was a question for the jury. Under instruction P-8 if the jury found that the defect was not obvious it could find for Mrs. David.
By finding for Mrs. David the jury obviously found that the hazard was concealed. There is testimony in the record to support that finding. It was not error to grant Instruction P-8.

III.

DID THE COURT ERR IN REFUSING TO GRANT THE CENTER'S MOTION FOR A DIRECTED VERDICT AND/OR INSTRUCTION D-1?
Under the rules of civil procedure the same standard applies to both motions for a directed verdict and a peremptory instruction. The review of a motion for a directed verdict must be examined in light of the standard of review set forth in the *57 case of Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652 (Miss. 1975), and its progeny. When a party moves for a directed verdict the trial court must look, "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury." Hall v. Mississippi Chemical Exp. Inc., 528 So.2d 796, 798 (Miss. 1988).
For Mrs. David to defeat the motion for a directed verdict her testimony, along with inferences, must show that there was an obstruction or hazard in the pathway that presented an unreasonable risk and that the center had actual or constructive knowledge of the obstruction or hazard. Also Mrs. David must show that she was injured as a result of this hazard. The testimony on behalf of Mrs. David and the inferences that could reasonably be drawn therefrom show that the walkway in question was the only practical means of access between the parking lot and the hospital. The piece of concrete that caused the injury was situated in the middle of the walkway. Both Mrs. David and the center's physical plant manager, Ronald Patterson, testified that they had trouble seeing the object. Mrs. David did not see it until the next day when she made a conscious effort to find what she tripped on and Patterson never saw the object until it was brought to his attention. The piece of concrete constituted a hazard.
The next question that arises was whether the center had knowledge of the hazard. Mr. Patterson testified he inspected the grounds monthly looking for potential hazards. He further stated that he had never been informed of a problem with that area. The mere fact that someone had not been previously injured is not sufficient to show that the center did not have constructive knowledge of the hazard. What is involved in the case is not like the slip and fall cases where something was spilled on the floor only hours before. Here the parking lot had been in service for over thirteen years. The walkway from the parking lot to the hospital was subject to use and erosion which over a period of years allowed this embedded object to become exposed two inches, or if it was a piece of loose concrete, for it to have become anchored in the dirt. The period of time was sufficient for the center to have knowledge of the hazard, at least under the standard of review of a directed verdict. The denial of the directed verdict to the center was not error.
We also must examine whether Mrs. David showed enough proof of causation to get her claim to the jury. When the judge denied the motion he had heard testimony by deposition from Dr. Duncan that Mrs. David's injury could have been caused by an injury like she described although he doubted it. The trial court also heard Dr. Wansley state that in his expert opinion Mrs. David's hospitalization at the Oschner Hospital was the result of her accident at the center. There is also the testimony of Mrs. David as to how she was injured. For the purposes of the motion for directed verdict this testimony was sufficient proof of causation. Mrs. David met her standard to defeat the Motion for Directed Verdict.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.