**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 91-1511**
_____

**MYRON BATTS,**

**Plaintiff-Appellant,**

**VERSUS**

**TOW-MOTOR FORKLIFT COMPANY and CATERPILLAR INDUSTRIAL, INC.,**

**Defendants-Appellees.**

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____

(November 25, 1992)

Before BRIGHT,[1] JOLLY, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

At issue in this Mississippi diversity action is whether, under its products liability law, recovery against a product's manufacturer by an injured non-user of that product (a bystander) is barred if the product defect or danger is open and obvious to an ordinary user, regardless of whether the bystander knew, or should have known, of the danger. Myron Batts was injured when a forklift operated by a co-employee backed into him. Batts sued the forklift manufacturer, claiming that the lack of any mirror or back-up warning device on the forklift rendered the manufacturer liable under the theories of negligence and strict liability in tort. A

---

[1]   Senior Circuit Judge of the Eighth Circuit, sitting by designation.

jury returned a verdict for the manufacturer, after being instructed that Batts, a bystander, could not recover under either theory if it found that the danger was open and obvious. For both theories of liability, this was a correct statement of the law; we **AFFIRM**.

## I.

Batts was employed in Mississippi by Flavorite Laboratories, Inc. His duties included operating a type forklift called a "tugger"[2] in a room which was often noisy. In that room, at least one forklift operated in addition to Batts' tugger. On the day Batts was injured in 1984, a co-employee, Charles Johnson, was operating a forklift manufactured in 1965 by Towmotor Corporation.[3] (Towmotor was purchased by Caterpillar.) The forklift was operated by a seated driver using controls to his front, as are the lift forks, and is generally operated in reverse as often as forward. At the time of manufacture, Towmotor produced forklifts with load capacities ranging from 2,000 to 60,000 pounds. The forklift in issue had a 2,500-pound capacity and was designed for use in warehouses and other indoor areas. The forklift collided with Batts when Batts was backing, and walking beside, the tugger; and Johnson was operating the forklift in reverse, but without sounding its manual horn.

---

[2] A tugger is motorized; and the operator walks behind and guides it.

[3] Flavorite purchased the forklift from a third party in 1980.

Although neither party contends that a back-up alarm sounded on the forklift before it hit Batts, whether any such device was then in place is disputed (as discussed in note 6, *infra*, concerning Caterpillar's superseding proximate cause defense). After the accident, electrical alarms and flashing lights were installed on the forklifts at Flavorite. These items were available when the forklift was manufactured in 1965 and could be installed at customer request. However, they were not standard options on Towmotor forklifts of the capacity involved in this case. Indeed, no American manufacturer so offered them. Caterpillar's witnesses opined that the need for back-up warning devices depends on the customer's application and that their use is appropriate when an operator's visibility is restricted.

At trial in 1991, Batts relied on claims of negligence and strict liability in tort;[4] but the jury, by special interrogatories, found for Caterpillar on both theories. Following the denial of his motion for JNOV or new trial, Batts brought this appeal.

## II.

Batts presented proof that the forklift should have had a back-up alarm, flashing warning lights, and/or rearview mirrors, and asserted that this failure entitled him to recover under either strict liability in tort (defective and unreasonably dangerous) or negligence (negligent design). On the other hand, Caterpillar

---

[4]    Prior to trial, a breach of warranty claim was dismissed as time-barred and is not in issue on appeal.

presented evidence that there was no restriction on the forklift operator's visibility to the rear and that there was a danger in an operator relying on alarms, lights, or mirrors, as opposed to looking in the direction of travel. One of its principal defenses was that the absence of such devices, and the concomitant danger of the operator not facing in the direction of travel, was open and obvious to the forklift owner and its employee operator (users) and that, under Mississippi law, this barred recovery by Batts.

Several of the jury instructions and a special interrogatory incorporated this open and obvious bar. (As discussed *infra*, the jury was instructed that Batts could not recover under negligence or strict liability in tort if the danger was open and obvious.) Batts' challenge to those items is the primary thrust of his appeal. (In notes 5 and 6, we quickly dispose of the other issues raised by Batts[5] and Caterpillar (which did not cross-appeal)[6].)

---

[5] Batts contends that several instructions and a special interrogatory improperly commented on the evidence. (We reject Caterpillar's contention that Batts did not preserve these objections.) The items so challenged were consistent with the evidence and the various claims and theories in issue. Contrary to Batts' contention, they were not peremptory; and, taken as a whole, the charge was proper, as discussed *infra*.

[6] Caterpillar contends on two bases that the district court erred in denying it summary judgment or a directed verdict. First, it relies on the theory of superseding proximate cause. The jury was instructed on that defense and given a special interrogatory. The leadperson in the blending department and a co-employee who sometimes operated the tugger testified that no back-up alarms were in place. On the other hand, the plant engineer testified that a back-up alarm bell was installed on the Towmotor forklift in 1980 or 1981. But, he had no knowledge that the alarm was functional on the day of the accident, or even six months or a year prior to it. And, the mechanic in charge of maintaining Flavorite's forklifts testified that the forklift Johnson was driving had a back-up bell;

- 4 -

In reviewing this challenge to jury instructions, "we view the [jury charge] as a whole in the context of the entire case. The judge must instruct the jurors fully and correctly on the law applicable to the case, including defensive theories raised by the evidence." *Crist v. Dickson Welding, Inc.*, 957 F.2d 1281, 1287 (5th Cir. 1992). However, the district court is given broad discretion in formulating the charge and special interrogatories, and our review on appeal is deferential. *Bradshaw v. Freightliner Corp.*, 937 F.2d 197, 200 (5th Cir. 1991). "`A judgment will be reversed only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.'" *Hall v. State Farm Fire & Casualty Co.*, 937 F.2d 210, 214 (5th Cir. 1991) (citation omitted).

---

that it was Flavorite's practice to check the alarm bells every 30 days; that replacement bells were needed for the forklift one or two times a year, because they would get knocked off or operators would tamper with them; that he examined the forklift on the day after the accident; and that the back-up bell was working at that time. Accordingly, Caterpillar asserts the proof showed that several years before the accident, it equipped the forklift with a back-up warning device; it was in place within a month before the accident; and, if it was not operable at the time of the accident, that fact -- including its removal or destruction -- cannot be charged to Caterpillar.

Second, Caterpillar contends that reasonable minds could not differ regarding warning devices not being needed on the forklift, as demonstrated by the proof that the forklift complied with all industrial standards and consumer expectations. (As discussed *infra*, "consumer expectations" is a critical issue in a Mississippi strict liability in tort action.)

Caterpillar did not cross-appeal from these rulings. Assuming that we can reach these issues, they were for the jury; the district court did not err in denying the motions.

- 5 -

Needless to say, we apply Mississippi law in deciding whether the instructions correctly stated the applicable law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir. 1991). And, we review *de novo* the district court's interpretation of that law. *Salve Regina College v. Russell*, __ U.S. __, __, 111 S. Ct. 1217, 1221 (1991). In deciding an unsettled point of state law, *Erie* requires that we determine how the Mississippi Supreme Court would interpret its own law if presented with the question. *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991). When we are required to make an *Erie* guess, it is not our role to create or modify state law, rather only to predict it. *Id.*

Under products liability law, recovery by a bystander against a manufacturer for an injury caused by its product can be an elusive, complex, and difficult concept, especially because of the many terms and defenses and other rules established for Mississippi products liability, and because of resulting inconsistent, if not conflicting, precedent. Batts asserts that only under the theory of assumption of risk, with its subjective standard, can an open and obvious danger associated with the forklift bar his recovery; that is, the jury would have to find that he knowingly and voluntarily encountered a known risk -- the forklift backing up. But, although a subjective standard is used for assumption of risk, an objective standard, which concerns an ordinary user, not the person(s) actually using or injured by the product, is applied for the open and obvious defense to claims under negligence and strict

liability in tort. ***Toney v. Kawasaki Heavy Industries, Ltd.***, 975 F.2d 162, 168-69 (5th Cir. 1992); ***Gray v. Manitowoc Co.***, 771 F.2d 866, 871 (5th Cir. 1985) ("both the Restatement's theory of strict liability and Mississippi's theories of negligence and implied warranty require an objective appraisal of the obviousness of a product's hazard"); Restatement (Second) of Torts § 402A cmt. i (1965) (the product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer ... with the ordinary knowledge common to the community"). This objective standard is all that is in issue here.[7]

As discussed *infra*, we hold that an open and obvious danger to an ordinary user precludes recovery against the product manufacturer under negligence and strict liability in tort. Accordingly, an open and obvious defect precludes Batts' recovery against Caterpillar (the manufacturer), regardless of whether he knew, or should have known, of that danger.[8]  Therefore, we reject

---

[7]  Batts maintained that assumption of risk had no application to this case.  That bar is not in issue.

[8]  In issue is only recovery by an injured bystander against a product manufacturer where the open and obvious bar is raised. Therefore, we are not concerned with, nor do we discuss, other defenses or claims that might be raised.  For example, contrary to the position taken by the able dissent, although an open and obvious danger bars recovery against the product manufacturer by an injured bystander, he or she still has a claim against the product user, unless, as here (workers' compensation bar), that avenue of recovery is foreclosed.  (In this case, liability is shifted not to Batts, but to the user, and hence, workers' compensation.)  And, of course, for such a claim, assumption of risk or contributory negligence by the injured bystander could be asserted.  But, again, we are not concerned in this appeal with the seemingly limitless array of claims, defenses, bars, and other theories inherent in products liability actions.

Batts' contention that a bystander's awareness of an open and obvious danger would simply reduce any recovery under Mississippi's comparative negligence standard.[9]  We now address the bases in Mississippi law for this holding.

A.

1.

It is more than well-established that, for strict liability in tort, Mississippi adheres to the Restatement (Second) of Torts § 402A.[10]  *E.g.*, **Toney**, 975 F.2d at 165; **Lloyd v. John Deere Co.**, 922

---

[9]    The Mississippi comparative negligence statute provides in relevant part:

> In all actions hereafter brought for personal injuries, ... the fact that the person injured ... may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured ....

Miss. Code Ann. § 11-7-15.  The jury was instructed on comparative negligence, as part of the standard charge.  *See* note 8.

[10]    That section provides in part:

> § 402A.  Special Liability of Seller of Product for Physical Harm to User or Consumer
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965).

F.2d 1192, 1194 (5th Cir. 1991); *Coca Cola Bottling Co. v. Reeves*, 486 So.2d 374, 377-78 (Miss. 1986) (en banc). Moreover, Mississippi law interprets § 402A to permit recovery by a "bystander". *Hall v. Mississippi Chem. Express, Inc.*, 528 So.2d 796, 799 (Miss. 1988) ("Though a bystander, [plaintiff] is ... eligible under" § 402A.); *Reeves*, 486 So.2d at 378 ("fact that [plaintiff] may arguably be classified as a bystander" is not bar to § 402A action).

In *Reeves*, a bottle fell through a carton being removed from a shelf by someone in the vicinity of the plaintiff, who was injured when the bottle shattered upon hitting the floor. A threshold issue was whether the plaintiff, neither a purchaser nor other form of user, could recover under strict liability in tort. The Mississippi Supreme Court held that he could, noting:

> ... the duty imposed by Restatement § 402A to the extent that same has been incorporated into the positive law of this state exists in favor of anyone who may reasonably be expected to be in the vicinity of the product's probable use and to be endangered by it if it is defective. Therefore, the fact that [plaintiff] may arguably be classified as a bystander avails [defendant bottler] nothing inasmuch as children accompanying their parents, relatives or persons in loco parentis while shopping or otherwise on the premises may generally be expected to be in the vicinity of the handling of soft drink cartons and to be endangered if those cartons are defective.

486 So.2d at 378 (citations omitted).[11]  In so holding, the court noted:

> The justness of allowing bystanders to recover on a strict products liability theory is demonstrably greater than is the case with almost any other potential plaintiff, for the bystander is less able to avoid the accident than almost any other.

*Id.* at 378 n.2.  The open and obvious bar was not in issue in *Reeves*.  But, in any event, this footnote is indicative of the competing interests in products liability law that clouds the issue in Batts' case.

The forklift was for indoor use.  For that and other reasons, Batts could arguably "reasonably be expected to be in the vicinity of the [forklift's] probable use and to be endangered by it if it is defective."  *Id.* at 378.  Several of the instructions included "bystanders" among those to be considered; and much of the language used was similar to that in *Reeves*.  The jury was instructed that Batts was a bystander (Caterpillar does not contest that here) and could "recover for injuries[,] consistent with all of the instructions".  The court instructed the jury:

> Manufacturers of products have a legal duty to design products that are not in a defective condition unreasonably dangerous *to users, consumers, or bystanders*.  This duty includes the

---

[11]    Likewise, in an "*Erie* guess" shortly before *Reeves*, our en banc court reinstated the panel's vacated holding that, under Mississippi law, a manufacturer can owe bystanders a strict liability "duty" that "grows out of the contemplated or normally intended use of its defective product and extends at least to those persons within the area of that use who can reasonably be foreseen to be endangered." *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506, 514 (5th Cir. 1984), *reinstated in relevant part on reh'g*, 750 F.2d 1314, 1317 (5th Cir. 1985) (en banc), *cert. denied*, 478 U.S. 1022 (1986).

obligation to install safety and warning devices which will prevent accidents or injuries which are reasonably foreseeable from occurring.

(Emphasis added.)[12]

For the strict liability in tort claim, the district judge, as requested by Caterpillar, charged that an open and obvious danger cannot render the product unreasonably dangerous. Over Batts' objections, the district judge instructed, in part, that

the plaintiff has alleged that the absence of a back-up alarm, flashing warning lights, and/or rearview mirrors on the forklift ... entitles him to recover against the defendant on the theory of strict products liability. ... [I]n order for the plaintiff to prevail on this theory he must prove by a preponderance of the evidence that the forklift ... was in a defective condition when it was sold in 1965 and *unreasonably dangerous to the user of the forklift* and that the defective

---

[12]    In fact, one of the instructions given for Batts, over Caterpillar's objection, erroneously conflated "ordinary consumer" and "ordinary bystander":

If you find ... that the forklift was in a defective condition, unreasonably dangerous when sold by [Caterpillar] ... because it failed to have mirrors, audible back-up alarms, and/or flashing warning lights, and *that the danger from the forklift in its defective condition, unreasonably dangerous, was not reasonably foreseeable by the ordinary consumer or bystander with the ordinary knowledge common to the community as to the characteristics in common usage of forklift products* ... and that Myron Batts was injured while the forklift was being used in a manner which was reasonably foreseeable by [Caterpillar], and that the lack of mirrors, audible back-up alarms, and/or flashing warning lights was the sole proximate cause or a proximate contributing cause of Myron Batts's injuries, then in that event your verdict should be for [Myron Batts].

In any event, taken as a whole, the charge does not constitute reversible error.

condition, if any, was a proximate cause of the ...
accident ....

... [T]o find the forklift ... to be in a defective condition means that you find that there was something wrong with the [forklift]. *To find that the forklift was unreasonably dangerous means that the forklift posed some danger beyond the contemplation of the ordinary user of the forklift.*

... *[A]ny alleged danger which is open and obvious cannot be considered to be unreasonably dangerous.*

(Emphasis added.) After giving the strict liability instruction, the district judge later reemphasized -- without specifying under which theory of recovery -- the preclusion to recovery if the following danger was open and obvious:

If you find ... that the operation of the forklift ... without the driver facing in the direction of travel and without sounding the manual horn to warn a pedestrian presents an open and obvious danger, regardless of whether the forklift was equipped with [a mirror or warning device], then ... it is your sworn duty to return a verdict for the defendant.

Finally, a special interrogatory asked correctly whether, on the date of the accident, "the defect, if any, was open and obvious to a *reasonable and prudent user*...." (Emphasis added.)[13] The jury was instructed properly that if it so found, it was to find for Caterpillar. Concerning the challenged instructions that incorporated open and obvious danger elements, as well as the

_____

[13] This was the third interrogatory; the first two, which the jury answered in the negative, asked whether "Caterpillar was negligent in its design of the forklift" and whether "the forklift as manufactured and sold by Caterpillar was defective and unreasonably dangerous at the time of the sale and delivery". The jury was instructed to stop if it answered "no" to these two. Accordingly, it did not reach the open and obvious danger interrogatory.

corresponding special interrogatory, the charge, as a whole, was correct; we are not left "with substantial and ineradicable doubt whether the jury [was] properly guided in its deliberations." *Hall*, 937 F.2d at 214.

2.

Batts admits that "the patent danger doctrine ... has been embraced by Mississippi jurisprudence in the past", but contends that the Mississippi Supreme Court has now "laid to rest" the notion that an open and obvious danger exonerates the product manufacturer from strict liability in tort. Along that line, the Mississippi Supreme Court has adhered to a "consumer expectation" test. In *Ford Motor Co. v. Matthews*, 291 So.2d 169, 172 (Miss. 1974), it stated that liability lies under § 402A "`only when the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.'" (Quoting Restatement (Second) of Torts § 402A cmt. g (1965)). As a gloss on the terms "unreasonably dangerous", it quoted comment i, stating: "`The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" *Id*. (quoting Restatement (Second) of Torts § 402A cmt. i (1965)). As discussed *infra*, the Mississippi Supreme Court has continued to use this approach. *E.g*, *Toliver v. General Motors Corp*., 482 So.2d 213, 218 (Miss. 1985) (citing § 402A cmt. g and *Ford Motor*, 291 So.2d at 169).

- 13 -

Accordingly, based on Mississippi's choice to define "unreasonably dangerous" by reference to a reasonable, or ordinary, consumer's expectations of product performance, our court has held, as discussed *infra*, that there is no strict liability in tort under Mississippi law for a patent -- open and obvious -- danger. "[A] product that has an open and obvious danger is not more dangerous than contemplated by the consumer, and hence cannot, under the consumer expectations test applied in Mississippi, be unreasonably dangerous." *Melton v. Deere & Co.*, 887 F.2d 1241, 1243 (5th Cir. 1989). (As quoted above, Batts' jury was so instructed.) *See also Gray*, 771 F.2d at 869 ("the consumer expectation test of section 402A ... requires that harm and liability flow from a product characteristic that frustrates consumer expectations"; "the patent danger bar adopted by the Restatement was incorporated into Mississippi's doctrine of strict liability"). This rule is discussed fully in this court's recent decision in *Toney*, 975 F.2d at 165-66 (motorcycle owner injured in collision; claimed motorcycle should have had leg guards).

Batts concedes that decisions by our court support Caterpillar's contention that the consumer expectation test applies, as opposed to a risk utility analysis.[14] He asserts,

---

[14] For example, the Supreme Courts of New Jersey and Texas have applied the latter. *See, e.g., Ryan v. KDI Sylvan Pools, Inc.*, 121 N.J. 276, 290, 579 A.2d 1241, 1248 (1990); *Turner v. General Motors Corp.*, 584 S.W.2d 844, 851 (Tex. 1979). Under the risk-utility approach, "a product can be said to be defective in the kind of way that makes it `unreasonably dangerous' if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 99, at 699 (5th ed. 1984).

however, that our interpretation is at odds with the position taken by the Mississippi Supreme Court in two decisions in 1988, *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss. 1988) and *Hall v. Mississippi Chemical Express, Inc.*, 528 So.2d 796 (Miss. 1988), as well as in *Toliver*, rendered in 1986.

First, these cases do not persuade us that Mississippi has fundamentally shifted its test from one of consumer expectation to risk utility. Second, even if we agreed with Batts, we would be bound by the interpretation given by a prior panel of this court in *Melton* (which rejected a similar contention, 887 F.2d at 1243) and *Toney*.[15] No Mississippi case has appeared since *Melton* was rendered in 1989 to indicate that its analysis of Mississippi law was incorrect.[16]

### 3.

As noted, there is no contention that Batts was a "user". At trial, Caterpillar repeatedly stated that the owner was the "user"; there is no charge that Batts, in performing his duties with the tugger, or otherwise, was working in conjunction with the forklift, so as to make him a "user" of it; and, in fact, the district court instructed that Batts was a "bystander". As discussed earlier,

---

[15]  "`In this circuit one "panel may not overrule the decision, right or wrong, of a prior panel" in the absence of en banc reconsideration or superseding decision of the Supreme Court.'" *Burlington N. R.R. v. Brotherhood of Maintenance of Way Employees*, 961 F.2d 86, 89 (5th Cir. 1992) (citations omitted).

[16]  Batts also requests, in the alternative, that we certify this question to the Mississippi Supreme Court. Our law is clear; the Mississippi law upon which our precedent is based is unchanged. We thus decline to do so.

Batts status as a "bystander" does not prevent him from asserting a § 402A claim that the forklift was defective and unreasonably dangerous.  Among other things, he had to prove that (1) he could "reasonably be expected to be in the vicinity of the [forklift's] probable use and to be endangered by it if it is defective", *Reeves*, 486 So.2d at 378; and (2) "the [forklift] was defective and ... its defective condition made the [forklift] unreasonably dangerous to him", *Toliver*, 482 So.2d at 216 (emphasis in original).  As discussed and quoted *supra*, in proving that a product was "defective and unreasonably dangerous", Mississippi applies the consumer expectation test -- the product is (1) "defective" when, at the time it leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him; and (2) "unreasonably dangerous" when it is dangerous to an extent beyond that which will be contemplated by the ordinary consumer, with the ordinary knowledge common to the community as to its characteristics.

Simply put, *products liability*, whether under negligence or strict liability in tort, does not focus on the status of the plaintiff; instead, it *focuses on the product.*  The focus is not on whether the injured party is a consumer, or user, or bystander, or whether the product is unreasonably dangerous to a particular person.  *E.g.*, *Toney*, 975 F.2d at 169; *Gray*, 771 F.2d at 869 (discussed *infra*); *Page v. Barco Hydraulics*, 673 F.2d 134, 138 (5th

- 16 -

Cir. 1982).[17]  Moreover, as discussed, the inquiry for strict liability is not whether the product was dangerous; it is whether it was *both defective and unreasonably dangerous*.  For example, an ordinary kitchen knife is dangerous, simply because of its blade; but, it is not *unreasonably* dangerous, because the ordinary consumer understands that the blade, due to its sharpness or point, can cause injury.  In products liability cases, by which we impose liability on a manufacturer, among others, *it is the product* -- the item placed in commerce for use or consumption -- on which liability turns.

Accordingly, even when the bystander is the injured party, the test must remain the same -- the product is defective if, when it leaves the seller's hands, it is in a condition not contemplated by the ordinary consumer, which will be unreasonably dangerous to him; and, it is unreasonably dangerous if it is dangerous to an extent beyond that which will be contemplated by the ordinary consumer, with the ordinary knowledge common to the community as to its characteristics.  This is essentially how the district court instructed the jury.

---

[17]    This court stated in **Page**:

> ... *[I]n strict liability the focus is on the safety of the product itself*.  The question is whether the product meets the reasonable expectations of the ordinary consumer as to its safety, irrespective of all the care that the manufacturer might have put into making it.

673 F.2d at 138 (citations omitted).

Our decision in *Gray*, followed in *Melton* and *Toney*, controls on an open and obvious danger precluding strict liability in tort recovery by a bystander against a manufacturer.  (All three cases concerned injured users, not injured bystanders.)  While Gray was changing sections of a crane boom, the crane operator swung the boom, striking Gray.[18]  771 F.2d at 867.  He sued under strict liability in tort, implied warranty, and negligence, contending, *inter alia*, that there was a design defect in the crane, because the operator's vision was obscured to the left side, and that the crane should have provided mirrors or other devices to compensate.

The defendant manufacturer contended that the hazard was "open and obvious to ordinary users of the crane" and constituted a bar under any theory of products liability.  *Id.* at 868.  (*Gray's* holding for negligence is discussed in part II.B.)  As for strict liability in tort, our court felt "bound to apply" the consumer expectation test, and stated: "the consumer expectation test of section 402A is rooted in the warranty remedies of contract law, and *requires that harm and liability flow from a product characteristic that frustrates consumer expectations*."  *Id.* at 869 (emphasis added).

*Gray* was rendered six months before the Mississippi Supreme Court expressly held in *Reeves* what earlier Mississippi cases had implied -- that a bystander could recover under § 402A.  *Gray* does not make a distinction between "users" and "bystanders"; the latter

---

[18]    Because Gray was working with, or on, the boom, we consider him a user, not a bystander.

is not mentioned. It is true, as noted in the dissent, that a bystander's expectations, if any, about a product would not necessarily include knowledge of a danger that is open and obvious to an ordinary consumer; but, again, the test under Mississippi law for whether a product is defective and unreasonably dangerous does not focus on the actual user or the actual bystander (the persons actually using or injured by the product) but, instead, focuses on the ordinary consumer with ordinary knowledge common to the community as to its characteristics. For this reason, **Gray** held that "the Grays' right to recover under the theory of strict liability depends upon whether the evidence was sufficient to permit the jury to find that the ... crane was `dangerous to an extent not contemplated by the *ordinary consumer* who purchased it, with the *ordinary knowledge* common to the community as to its characteristics.'" **Id.** at 870 (emphasis added). Again, this rule is solidified in **Toney**.[19]

As noted, in the challenged strict liability instructions, the district court instructed that "any alleged danger which is open and obvious cannot be considered to be unreasonably dangerous" and that the jury was to return a verdict for Caterpillar if it found "that the operation of the forklift ... without the driver [user] facing in the direction of travel and without sounding the manual horn to warn a pedestrian presents an open and obvious danger,

---

[19] The dissent posits that we fail to explain why the consumer expectation test applies to bystanders. In short, as discussed above, Mississippi law and our circuit precedent require it. The same is true for our holding on the negligence claim.

regardless of whether the forklift was equipped with [a mirror or warning device]. ..."  In addition, as also noted, in a special interrogatory, the jury was instructed that if it found "[t]hat the defect, if any, was open and obvious to a reasonable and prudent user on" the date of the accident, then it must return a verdict for Caterpillar.  This was a correct statement of the law, even for a bystander plaintiff.

B.

For the negligence claim, as discussed, whether the danger is open and obvious is also measured by an objective -- reasonable person -- standard, *e.g.*, **Toney**, 975 F.2d at 168-69; **Gray**, 771 F.2d at 871.  In instructing the jury, over Batts' objections, on that claim, the district judge stated:

> ... [T]he duty of a manufacturer is to provide a product which is reasonably fit.  There is no duty to provide a perfectly safe product.  [Batts] alleges negligence in the design of the forklift ... involved in the accident. ...  In order for [him] to recover under this theory, ... the burden of proof is upon [him] to prove ... that the absence of [a mirror or warning device] constituted a concealed or hidden dangerous condition, thereby making the forklift defective and unreasonably dangerous.  If you find ... that the alleged danger of the forklift ... was open and obvious, and that the forklift functioned properly for its intended use, then ... you must return a verdict for the defendant as to [Batts'] claim of negligent design.

As quoted earlier, the district court also gave a general instruction that the jury had to find for Caterpillar if it found that a driver operating the forklift without facing in the direction of travel and without sounding his horn presented an open

and obvious danger.  And, it gave the special interrogatory on open and obvious danger.

1.

The district court's instruction is consistent with **Toney** and **Gray**.[20]  And, **Gray** relied on decisions by the Mississippi Supreme Court in **Harrist v. Spencer-Harris Tool Co.**, 244 Miss. 84, 140 So.2d 558 (1962) and **Jones v. Babst**, 323 So.2d 757 (Miss. 1975).  As in **Gray**, those Mississippi cases concerned injured users, not injured bystanders.[21]  **Gray** held that

---

[20]    Indeed, at the charge conference, the district judge placed considerable reliance on **Gray**.

[21]    In **Harrist**, decided before the adoption of strict liability in tort in Mississippi, the plaintiff/"employee-user" alleged negligence in the design of steps aboard an oil rig.  140 So.2d at 559.  He requested that the court abolish the privity of contract rule for products cases grounded in negligence and implied warranty.  **Id**. at 561.  The court found it unnecessary to do so because, assuming it would, it

> would be required to affirm the trial court because
> the alleged defects are not considered to be latent
> or concealed.  If we assume there were defects, we
> think they were *apparent and obvious* to a casual
> observer.

**Id**. (emphasis added).  Despite the opportunity presented for the court to hold that the obviousness of the danger was a comparative negligence factor, it held instead that the defendant's negligence *vel non* in designing the steps was not even a jury question.

In **Jones**, the court quoted with approval this court's opinion in **Ward v. Hobart Manufacturing Co.**, 450 F.2d 1176, 1180 (5th Cir. 1971), stating that **Ward**

> set out the *general rule for negligent design cases
> followed by this Court;* "[W]here the alleged danger
> is open and obvious and the manufacturer has done
> everything necessary to insure that the machine
> will function properly for its designed purpose any
> duty owed to a future user has been fulfilled."

- 21 -

> a manufacturer's liability for product defects under Mississippi's doctrines of negligence and implied warranty may not, as a matter of law, be premised on the existence of an obvious hazard in a product which functions properly for its intended purpose.

*Gray*, 771 F.2d at 868.[22]  *Toney* repeats this rule.  975 F.2d at 169.  We are not cited to, nor have we found, a Mississippi case holding that an open and obvious danger, without more, can bar recovery for a products liability negligence claim by a bystander. But, as discussed *supra*, the focus in products liability is on the product.  Moreover, for negligence, and as the Batts' jury was instructed, the manufacturer's duty is to produce a reasonably safe product.  Therefore, *Gray* controls.

---

323 So.2d at 759 (emphasis added).  The court affirmed a directed verdict for the manufacturer on strict liability and negligence claims, because there was no evidence supporting those theories; it found the evidence instead supported a hypothesis that the subject accident resulted from improperly attaching lug nuts in repairing an automobile tire.  Accordingly, a jury verdict against the defendants involved in the repair was affirmed.

In applying Mississippi law, we, of course, are controlled by decisions by the Mississippi Supreme Court; but, it does appear that *Jones* overstates the holding in *Ward*, a pure negligent design case brought by a plaintiff injured while cleaning a meat grinder. 450 F.2d at 1178, 1180.  *Gray*, however, ruled that the Mississippi Supreme Court would follow *Jones*.  771 F.2d at 868 n.1.

[22]    *Toney* and *Gray* are this court's latest pronouncements on the open and obvious defense in a Mississippi negligent design case. *Melton* concerned only strict liability in tort, 887 F.2d at 1242; and in *Lloyd* (1991) (open and obvious danger to injured user; improper design and failure to warn claims; directed verdict granted), "while we ... applied the standard for a directed verdict as to all three theories, or bases, for liability [negligence, warranty, strict liability in tort], and [found] it correctly granted for each, our analysis [was] couched in the language of § 402A strict liability."  922 F.2d at 1194 n.2.

Batts contends, however, that recent premises liability decisions by the Mississippi Supreme Court control. Liability for negligently designed products is, of course, merely one form of common law negligence, to which the ordinary rules of negligence apply. *E.g.*, **Toliver**, 482 So.2d at 219 ("[S]trict liability `does not preclude liability based upon the alternative ground of negligence ...' .... Under this theory, the usual defenses to a charge of negligence would apply." (citations omitted)). And, in some types of negligence cases in Mississippi involving open and obvious dangers, the jury may find for the plaintiff, and then apply comparative negligence. *E.g.*, **Goodwin v. Derryberry Co.**, 553 So.2d 40, 43 (Miss. 1989). In **Goodwin**, a premises liability case, the Mississippi Supreme Court cited its earlier premises liability decision in **Bell v. City of Bay St. Louis**, 467 So.2d 657, 664 (Miss. 1985), which stated:

> In prior cases involving hazards that were extremely "open and obvious", this Court has not barred injured parties from recovery, but rather has left the issue to the jury properly instructed regarding comparative negligence. ...
>
> We have repeatedly condemned jury instructions which, if followed by the jury, would completely deny a negligent plaintiff recovery, even though the defendant may also be negligent.

*See also* **Caruso v. Picayune Pizza Hut**, 598 So.2d 770 (Miss. 1992) (affirming jury verdict against plaintiff who stumbled on mat placed over loose stripping; mat was "open and obvious", and question went to jury properly instructed on comparative negligence); **Biloxi Regional Medical Ctr. v. David**, 555 So.2d 53,

56 (Miss. 1989) ("`[C]onditions are not either open and obvious or not open and obvious.  Common sense and experience negate[] an either or categorization of such conditions.  Just how open and obvious a condition may have been is a question for the jury in all except the clearest of cases.'" (quoting **Bell**, 467 So.2d at 664)).[23]

Batts contends that these cases control; but they concern premises, not products, liability.  We do not find them persuasive in making our **Erie** guess on this issue.  This is aptly demonstrated by a simple, but conclusive, analogy in **Bell**.  In rejecting the claim that recovery in a premises liability action was barred if the danger was open and obvious, the Mississippi Supreme Court noted:  "We might as well exonerate as a matter of law a defendant who leaves his car parked in the middle of the street on grounds that the car was open and obvious."  467 So.2d at 664.  In this example, it was not a defect in the product (automobile) that caused the injury; it was the negligence of its owner, who left it in the middle of the street.  The same is true for this products liability negligence claim.  The forklift was operated in reverse and struck Batts, a bystander.  The jury found that a product defect did not cause the injury.

---

[23]     The Mississippi Supreme Court presumably relied on this "clearest of cases" exception when, in **McGovern v. Scarborough**, 566 So.2d 1225 (Miss. 1990), it affirmed a directed verdict against a plaintiff who stumbled on a raised threshold when entering a business premises.  The court expressed concern at the prospect of creating a jury question for "any doorway from the street which is not on the same level as the street."  **Id**. at 1228.

Consistent with our *Erie* holding for a strict liability in tort claim, an open and obvious danger in a product bars recovery on a products liability negligence claim by an injured bystander against the product's manufacturer. Indeed, as discussed, there is a whole body of products liability law dating from *Harrist* that effectively absolves a manufacturer from liability resulting from open and obvious product defects. Therefore, the district court correctly instructed the jury that, if it found "that the alleged danger of the forklift ... was open and obvious", it must return a verdict for Caterpillar on the negligent design claim.

## III.

For the foregoing reasons, we

**AFFIRM**.

E. GRADY JOLLY, Circuit Judge, specially concurring:


I concur in Judge Barksdale's opinion. I write separately only to set out in one place the principles of Mississippi products liability law that control this case today: First, I would emphasize that a manufacturer's duty to exercise due care in designing a product that is reasonably safe should not be confused with a manufacturer's strict liability for a defective product that is unreasonably dangerous. A manufacturer who has not negligently designed a product may nonetheless, in given cases, be held strictly liable for producing a defective product that is unreasonably dangerous. Thus, the distinction between the two standards may be critical.

In order to recover on a negligent design claim, the burden is on the plaintiff to prove that the defendant manufacturer failed to exercise due care in designing the product. The manufacturer may then raise, in the nature of an affirmative defense, that the claimed defect was open and obvious. If the manufacturer demonstrates, as a matter of law, that the defect in the product would be open and obvious to a casual observer, the plaintiff will be barred from recovery under his negligence claims, because "no duty rests upon a manufacturer or seller to warn a purchaser of a dangerous design that is obvious." Harrist v. Spencer-Harris Tool Co., 140 So.2d 558, 562 (Miss. 1962). Moreover, one factor that is often considered when determining whether a manufacturer breached its duty to design a reasonably safe product is "the conformity of [its] design to the practices of other manufacturers in its industry at the time of manufacture." Ward v. Hobart Manufacturing Co., 450 F.2d 1176, 1182 (5th Cir. 1971). This factor is often determinative because in most cases it serves as a reliable indicia of the standard of care that a reasonably prudent manufacturer would exercise.

In order to recover on a strict products liability claim based on a design defect, the plaintiff need only prove that the manufacturer produced a defective product that is unreasonably dangerous to the ordinary consumer, and that the product was defective when it left the control of the manufacturer. Traditional negligence notions of fault and care are not relevant in making this determination; the primary focus of the inquiry is on the character of the product, not on the conduct of the

manufacturer. A manufacturer may be strictly liable even if it has exercised all possible care in making the product, if that product is dangerous to an extent beyond that which would be contemplated by an ordinary consumer with the ordinary knowledge common to the community of the product's characteristics. See Restatement (Second) of Torts, § 402A, comment i. It follows that a product with an open and obvious defect is not "dangerous to an extent beyond that which would be contemplated by an ordinary consumer," and thus cannot be unreasonably dangerous. In strict products liability claims, then, the open and obvious nature of the defect is necessarily tied to the definition of an unreasonably dangerous product. Under the consumer expectation test, a plaintiff can never prove that an alleged defect renders a product unreasonably dangerous if that defect is open and obvious to the ordinary consumer or user.

We thus make clear that, concerning strict products liability claims, Mississippi follows the consumer expectations test, that this test is an objective one, that whether the product is unreasonably dangerous is judged from the point of view of the ordinary consumer or user, and that if the alleged defect or danger is open and obvious to an ordinary consumer or user, the product is not unreasonably dangerous as a matter of law. Thus, although a bystander can recover against a manufacturer, he stands in the shoes of the ordinary consumer, because the test's primary focus is on the characteristics of the product and not the individual status

--27--

and viewpoint of the individual plaintiff. With respect to negligent design claims, a traditional negligence analysis is employed, with its focus on whether the product has been designed with due care by the defendant manufacturer. The open and obvious nature of the alleged defect can be raised, and if proved as a matter of law, the defense will operate to bar the plaintiff's recovery; material factual disputes with respect to the open and obvious defense, both with respect to strict liability claims and negligent claims, are to be resolved by the jury.

Thus, applying these principles to the case before us, we have concluded that Batts' strict products liability claims fail because the evidence fully supports that the alleged defects in the forklift were open and obvious to an ordinary consumer or user and thus the forklift was not an unreasonably dangerous product. With respect to Batts' negligence claims, we have concluded that, under Mississippi law, Batts' claim is barred because the evidence supports the finding that the alleged defects in the forklift were open and obvious to a casual observer.[24]

---

[24] The dissent states that "denying Batts recovery under strict liability because the danger of the forklift is open and obvious to an _ordinary consumer_, shifts the liability costs from the manufacturer, in this case, Caterpillar, to Batts." In our view, this statement is inaccurate. To the extent that the holding of the majority opinion "shifts" liability, it does so to the purchaser, user, employer, and/or operator; it does not shift the liability to Batts himself. Indeed, Batts' employer has already accepted statutorily imposed liability and has remitted payment to Batts under Mississippi's workers' compensation program. The removal of one "deep pocket" defendant is just not tantamount to the shifting of liability to the tort victim himself.

BRIGHT, Senior Circuit Judge, dissenting:

_____

The dissent argues that "this court's willingness here to extend user injury analysis to a bystander case, in my opinion, is not what the Supreme Court of Mississippi would do, were it ruling on this issue." The dissent ignores the principle that we are not permitted to guess what the Mississippi Supreme Court might do when the present law is perfectly clear. Mississippi has expressly stated on numerous occasions that it follows the Restatement and that it follows the consumer expectation test. This test evaluates the product's defect from the point of view of the ordinary consumer. The rule explicitly states that if the product meets <u>consumer</u> expectations, it is not defective. In other words, <u>consumer</u> expectations <u>define</u> what is and what is not an unreasonably dangerous product. The Mississippi rule--at present clearly enunciated--leaves no room for a "bystander expectation" test to define an unreasonably dangerous product. Thus, to address the dissent's suggestion that we are only engaging in an "analytically convenient argument": The reason the consumer expectation test applies to bystanders is because the test specifically and expressly defines a manufacturers liability for injury alleged to have been caused by its products. Moreover, as we have said in the body of the opinion, the test of whether a product is unreasonably dangerous, places the primary focus on the characteristics of the product and not the individual status and personal viewpoint of the particular plaintiff.

With respect to the negligent design claim, the dissent states:
> However, if he is viewed as a "bystander," then I agree with Batts that the open and obvious test requires two significant modifications. First, the person to whom the danger must objectively be open and obvious is Batts, not the user of the forklift. Second, the defense is not an absolute bar, but, like in ordinary negligence actions, is subject to comparative negligence.

We think this quote misstates the applicable law. The test employed for negligent design claims is whether the alleged defect or danger is open and obvious <u>to a casual observer</u>--a category that surely applies to Batts. The consumer expectation test is not applicable to negligent design claims. Thus, the first "modification" is no modification of Mississippi law; it is simply a restatement of current Mississippi law on negligent design. With regard to the second "modification," we have no authority to make this type of change in the law; the Mississippi Supreme Court has said that the defense <u>is</u> an absolute bar, and thus we are bound to follow its dictate. Of course, the Mississippi Supreme Court can

I respectfully dissent here because I believe the Supreme Court of Mississippi would consider the status of the person injured by a product in determining whether the open and obvious danger rule bars that person from recovering in a products liability suit. Specifically, I believe the court, at a minimum, would apply a premises liability approach to application of the rule in a negligence case, in which a bystander, injured by a product, brings suit against the manufacturer.

I agree with this court that, for purposes of users and consumers, strict liability focuses on whether a particular product is dangerous, and not on the status of the person injured. Ante at 16. I also agree with this court's reading of Ford Motor Co. v. Matthews, 291 So. 2d 169 (Miss. 1974), its progeny, Toliver v. General Motors Corp., 482 So. 2d 213 (Miss. 1985) and Hall v. Mississippi Chem. Express, Inc., 528 So. 2d 796 (Miss. 1988), and this court's prior decisions in Gray v. Manitowoc Co., Inc., 771

change this rule if it wishes, and, indeed, it might; the point is that it has not and its present law is clear.

Similarly, the dissent argues that "[t]he crucial distinction between these cases and the instant case is that a bystander is generally not aware of the dangers that are, or should be, open and obvious to an owner, consumer or user." As stated above, the test used in negligent design claims is whether the defect is open and obvious to a casual observer; Batts, as a "bystander," and as a casual observer who worked in the plant where the forklift was used, would clearly fall within this category of persons to whom the defect of the forklift would have been open and obvious.

--30--

F.2d 866 (5th Cir. 1985); <u>Melton v. Deere & Co.</u>, 887 F.2d 1241 (5th Cir. 1989); and now <u>Toney v. Kawasaki Heavy Indus., Ltd.</u>, No. 91-1577 (5th Cir. Oct. 7, 1992) that the Mississippi Supreme Court has adopted the "consumer expectation" test in determining strict liability under section 402A of the Restatement (Second) of Torts. <u>Ante</u> at 13. Moreover, I acknowledge this court has ruled that, for purposes of "users," there is no recovery for a patent, open and obvious danger. <u>Melton</u>, 887 F.2d at 1243. Finally, I do not disagree that the Mississippi Supreme Court employs an objective standard in applying the consumer expectation test. <u>Gray</u>, 771 F.2d at 871.

However, I do disagree with this court's application of these cases to the instant case. Each of the above cases relates to a user injury.[25] Collectively, these cases represent a significant body of case law derived from, and specifically tailored to, user injuries. But Batts was a bystander, not a user.[26] There was

---

[25]In <u>Ford</u>, an employee was injured when a truck he was attempting to repair moved forward, pinning him against another truck. In <u>Toliver</u>, an owner of a vehicle suffered injuries resulting from a defective gas tank in the car. In <u>Gray</u>, an ironworker foreman was injured when the butt end of a crane's boom struck him while he supervised his crew in changing sections on the boom. In <u>Melton</u>, a user of a combine was injured in attempting to clean it. In <u>Toney</u>, a driver of a motorcycle was injured when he was struck by a car.

[26]This court concedes that Batts was a bystander, and not a user. <u>Ante</u> at 15-16. "Bystanders" are expressly permitted recovery under Mississippi strict liability law. <u>Hall v. Mississippi Chem. Express, Inc.</u>, 528 So. 2d 796, 799 (Miss. 1988). <u>See also</u> <u>Jackson v. Johns-Manville Sales Corp.</u>, 727 F.2d 506, 514 (5th Cir. 1984).

nothing he could have done to avoid the accident because he neither had control over the danger, nor was aware of its presence.

In my opinion, this court's failure to address Batts' bystander status is at odds with the fundamental purpose of strict liability as developed in Mississippi. The Supreme Court of Mississippi has long recognized that the purpose of product liability "is to insure that the costs of injuries resulting from defective products are borne by the manufacturers . . . rather than by the injured persons who are powerless to protect themselves." State Stove Mfg. Co. v. Hodges, 189 So. 2d 113, 120 (Miss. 1966), cert. denied, Yates v. Hodges, 386 U.S. 912 (1967) (quoting Greenman v. Yuba Power Products, Inc., 377 P.2d 897, 900-01 (Cal. 1963)). The court has noted that the purpose and subsequent effect of forcing manufacturers to internalize these costs is to create incentives for manufacturers to produce safer products. See generally id. at 119.

But denying Batts recovery under strict liability because the danger of the forklift is open and obvious to an ordinary consumer, shifts the liability costs from the manufacturer, in this case, Caterpillar, to Batts. Consequently, Caterpillar has less incentive to make its equipment safer. Application of the open and obvious rule here encourages manufacturers to produce goods that

---

The distinction I draw here between a user and bystander is a narrow one. It applies only for purposes of applying the open and obvious danger rule in a case in which a bystander injured by a product seeks to recover against the manufacturer.

are increasingly more dangerous because, in effect, the greater the "open and obvious" danger, the greater the protection from liability the manufacturer enjoys.

This court's willingness here to extend user injury analysis to a bystander case, in my opinion, is not what the Supreme Court of Mississippi would do, were it ruling on this issue.[27]  Although analytically convenient, this court's application of a consumer expectation test fails to explain the reason why the test should apply to bystanders.

To the extent Mississippi would apply a different rule for bystanders, Batts should be entitled to recovery.  However, I recognize this issue remains a question of first impression in Mississippi and, thus, do not rest my decision on these grounds alone.

In my opinion, an even more persuasive case is made on Batts' negligent design claim.  As a general rule, manufacturers have a duty to design reasonably safe products.  Ward v. Hobart Mfg. Co., 450 F.2d 1176, 1182 (5th Cir. 1971).  However, if the danger of a particular product is "open and obvious," and the product functions properly for its intended use, parties are barred from recovery.  See Harrist v. Spencer-Harris Tool Co., 140 So. 2d 558, 562 (Miss. 1962).

---

[27]It might very well adopt the rationale of looking to the nature of the accident and the obviousness of the danger to the person injured, as this court did in Page v. Barko Hydraulics, 673 F.2d 134 (5th Cir. 1982).

In Harrist, an employee of the purchaser of an oil rig slipped and fell on the steps of the rig due to "external and visible defects which . . . [were] plain and obvious to the purchaser . . . ." Id. at 561. Faced with a possible no privity defense, the court treated the employee as a purchaser and denied him recovery because the defect in the rig was open and obvious.

The bar in Harrist, however, does not apply in every case. Whether it applies here should turn on whether Batts is considered a product "user" or a "bystander." If he is a "user" and, as such, should recognize a forklift operating in reverse to be an open and obvious danger, he would be barred from recovering on a negligent design claim. Id.; Ward v. Hobart Mfg. Co., 450 F.2d 1176 (5th Cir. 1971); Gray v. Manitowoc Co., 771 F.2d 866 (5th Cir. 1985).

However, if he is viewed as a "bystander," then I agree with Batts that the open and obvious test requires two significant modifications. First, the person to whom the danger must objectively be open and obvious is Batts, not the user of the forklift. Second, the defense is not an absolute bar, but, like in ordinary negligence actions, is subject to comparative negligence.

Again, the cases on which Caterpillar relies deal exclusively with employees who, unlike Batts, were injured while using the source of the danger which caused their injury.[28] The crucial

---

[28]As we have observed, in Harrist, an employee working on an oil rig was injured when he slipped and fell on stairs on the rig's platform. Harrist, 140 So. 2d at 559. In Ward, a woman lost several fingers cleaning a meat grinder manufactured by Hobart and

distinction between these cases and the instant case is that a bystander is generally not aware of the dangers that are, or should be, open and obvious to an owner, consumer or user.

Support for Batts' right to recover comes from premises liability cases in Mississippi. These cases generally hold that recovery for injuries resulting from open and obvious hazards is not automatically barred, but rather goes to the jury on the question of comparative negligence. Biloxi Regional Medical Center v. David, 555 So. 2d 53, 56 (Miss. 1989); Goodwin v. Derryberry Co., 553 So. 2d 40, 43 (Miss. 1989); Bell v. Bay St. Louis, 467 So. 2d 657, 664 (Miss. 1985).

In my opinion, the jury "charge as a whole leaves . . . substantial and ineradicable doubt" that the jury was properly guided in its deliberations. Hall v. State Farm Fire & Casualty Co., 937 F.2d 210, 214 (5th Cir. 1991). The trial court neither fully nor correctly instructed the jury as to the negligent design or strict liability claims. See Crist v. Dickson Welding, Inc., 957 F.2d 1281, 1287 (5th Cir. 1992). In my opinion, the jury should have been instructed that if Batts' injuries resulted from open and obvious hazards, his claims were not automatically barred, but were to be weighed against his comparative negligence.

---

used by the woman and her husband in a small restaurant they owned and operated. Ward, 450 F.2d at 1182. In Gray, as discussed above, an ironworker foreman suffered injury when the butt end of a crane's boom struck him while he supervised his crew in changing sections on the boom. Gray, 771 F.2d at 871.

Moreover, as I read the record, there exists little evidence of actual lack of due care on the part of Batts.  He neither saw nor apprehended the danger as it bore down upon him.  In these circumstances, I do not believe the federal courts should, nor the Mississippi courts would, necessarily bar Batts' recovery on the basis of an open and obvious defect to a user.  Accordingly, I would reverse and remand this case for a new trial under corrected instructions.[29]

---

[29]The concurrence suggests that, for the purposes of defining strict liability in Mississippi, no real distinction exists between a "consumer" and a "bystander."  Similarly, for purposes of negligent design, that opinion suggests "bystander" denotes "casual observer" in determining to whom the danger should be open and obvious. Regardless of the terminology, it seems to me that one in Batts' posture lacks knowledge of the danger as open and obvious, as a matter of law, by merely watching the general operation of the forklift.  The open and obvious danger comes about only when Batts, or one similarly situated, might actually see the forklift while it travelled backwards bearing down upon the person, inasmuch as this machine carried no automatic warning sounds or signals.